UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN FOOD SYSTEMS, INC., OLD
ANDOVER RESTAURANT, INC. d/b/a
GRASSFIELD'S FOOD & SPIRIT; OLD
WALTHAM RESTAURANT, INC. d/b/a
GRASSFIELD'S FOOD & SPIRIT; OLD
ARLINGTON RESTAURANT, INC.; d/b/a
JIMMY'S STEER HOUSE; OLD SAUGUS
RESTAURANT, INC. d/b/a JIMMY'S STEER
HOUSE; OLD SHREWSBURY RESTAURANT,
INC., d/b/a  JIMMY'S TAVERN & GRILL; OLD
LEXINGTON RESTAURANT, INC. d/b/a
MARIO'S ITALIAN RESTAURANT,

     *Plaintiffs*,

v.

FIREMAN'S FUND INSURANCE COMPANY,
and ALLIANZ GLOBAL RISKS UNITED
STATES INSURANCE COMPANY,

     *Defendants*.

Case No. 1:20-cv-11497

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM, OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AS TO IMPROPER DEFENDANT**

1

Defendants Fireman's Fund Insurance Company ("Fireman's") and Allianz Global Risks United States Insurance Company ("AGR") (collectively, the "Defendants") respectfully submit this memorandum of law in support of their Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or, in the alternative, to dismiss AGR as an improper defendant.

## I.   **Introduction and Background**

### a.   **Factual Allegations and Overwhelming Judicial Response to Similar Allegations**

Plaintiffs state their case in the first paragraph of the Amended Complaint:

> This case presents issues concerning whether Plaintiffs' . . . insurance policy provides coverage for damages sustained and/or expenses incurred by Plaintiffs as a result of unprecedented emergency Orders by state and local officials of the Commonwealth of Massachusetts restricting Plaintiffs' on-premises business activities to mitigate the COVID-19 pandemic.  The emergency Orders were intended to protect people and property from imminent, serious, and irreparable injury, by suspending on-premises business activities.  In the alternative, or in addition to the emergency Order, this case involves whether Plaintiffs' insurance policy provides coverage for damages sustained and/or expenses incurred by Plaintiffs where the COVID-19 virus was present on-site, causing damage to Plaintiffs' properties and on-premises business activities.

Compl. at 1-2. The issue Plaintiffs put forth to this Court has already been answered and given a decent burial. As of the date of the filing of this Motion, more than 100 federal and state courts from across the country have dismissed strikingly similar COVID-19 related complaints. *See* Appendix of COVID-19 Related Insurance Decisions ("Appendix"), attached hereto.

Plaintiffs allege three causes of action, all of which are premised on Fireman's denial of coverage: (1) breach of contract for failure to provide coverage for loss of income resulting from shelter in place Orders issued by state and local governments; (2) breach of the covenant of good faith and fair dealing; and (3) violation of Mass. Gen. Laws ch. 93A. Central to Plaintiffs' claims is the Policy, which lists nine insured premises in Massachusetts. *See* Exhibit A to Complaint

(hereinafter referred to as the "Policy"). Plaintiffs identify seven insured premises in the Amended Complaint. *See* Compl. ¶¶ 1-8. As with its previously filed Complaint, Plaintiffs fail to allege any *direct* physical loss or damage to those premises or other premises. To distract from this, Plaintiffs take a kitchen sink approach, reciting a litany of potential causes of loss or damage that are entirely speculative and conclusory, grounded in the Social Distancing Orders, and yet still unable to demonstrate direct physical loss or damage necessary to establish coverage, even if taken as true. *See, e.g.*, Comp. ¶¶ 76-77 (listing potential causes of loss as "the emergency Orders, or the COVID-19 virus," or "the risk of imminent harm," among others). In spite of the opportunity to amend their Complaint, Plaintiffs do not identify a single customer or employee who caught COVID-19 on their premises—premises which Plaintiffs assert were closed except for limited take-out and delivery operations due to Social Distancing Orders.

More importantly, Plaintiffs fail to allege direct physical loss or damage from COVID-19 to any insured floor, patio, table, chair, countertop, or other fixture, improvement, personal property, or real property. *See Uncork & Create LLC v. Cincinnati Ins. Co.*, No. 2:20-cv-00401, 2020 WL 6436948, at *5 (S.D. W. Va. Nov. 2, 2020) ("Property, including the physical location of Uncork and Create, is not physically damaged or rendered unusable or uninhabitable. If people could safely congregate anywhere without risk of infection, the Plaintiff has alleged no facts to suggest any impediment to Uncork and Create's operation. No repairs or remediation to the premises are necessary for its safe occupation in the event the virus is controlled and no longer poses a threat. In short, the pandemic impacts human health and human behavior, not physical structures.").

At most, Plaintiffs plead that COVID-19 was *possibly* somewhere in the covered premises. *See* Compl. ¶ 38 ("*Upon information and belief*, at all relevant times, the COVID-10

virus was present on all of Plaintiffs' insured properties.") (emphasis added). COVID-19 was *possibly* on copper, cardboard, plastic, and stainless steel. *See* Compl. ¶ 41. COVID-19 was *possibly* in the air. *See* Compl. ¶ 43. COVID-19 was *possibly* brought in by employees and customers. *See* Compl. ¶ 48. All of these possibilities amount to nothing more than unconcealed supposition, surmise, and conjecture. They do not constitute facts legitimately demonstrating that an identifiable fixture, improvement, or other personal or real property was actually and directly physically damaged by COVID-19. Moreover, Plaintiffs do not plead that they sustained any damage from having to repair or replace any fixture or improvement broken, torn, or destroyed due to COVID-19.

Among Plaintiffs' parade of possibilities is the true cause of their loss: the Social Distancing Orders. *See* Compl. ¶ 69 ("To comply with the emergency Orders, Plaintiffs were required to slow down and eventually cease their business activities, most importantly the provision of on-premises dining and alcohol services."). The Amended Complaint contains no explanation of how the Social Distancing Orders physically damaged fixtures or improvements on any premises as required to demonstrate direct physical loss or damage, meaning Plaintiffs have again failed to plead facts sufficient to trigger coverage. That is, a restaurant's tables and chairs are no different physically one minute after a Social Distancing Order issues than they were one minute before. Rather, the intended effect of all such Orders is to slow transmission by stopping patrons from sitting at those tables and in those chairs. Orders that reduce customer patronage, such as city ordinances that require liquor stores to close on Sundays, have an adverse economic impact to be sure but they do not cause direct "physical" loss or damage to property.

This Court should join the overwhelming majority of courts across the country that have rejected claims similar to Plaintiffs', with prejudice.

### b.  The Policy is Incorporated into the Complaint

"When, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State Street Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998). Here, Plaintiffs repeatedly refer to the Policy throughout the Amended Complaint, and attach the Policy to the Amended Complaint as Exhibit A. *See* Compl. at 2.

In their Complaint, Plaintiffs rely on several Policy provisions which are detailed below.

### i.  Business Income and Extra Expense Coverage

The Business Income and Extra Expense Coverage provision provides:

> If a Limit of Insurance for Business Real Property or Business Personal Property is shown in the Declarations, then we will pay for the actual loss of **business income** and necessary **extra expenses** you sustain due to the necessary **suspension** of your **operations** during the **period of restoration** arising from *direct physical loss or damage to property* at a **location**, or within 1,000 feet of such **location**, caused by or resulting from a **covered cause of loss**.

Policy at 6 (bolded emphasis in original; italicized emphasis added).

### ii.  Civil Authority Coverage

The Civil Authority Coverage states:

> We will pay for the actual loss of **business** income and necessary **extra expense** you sustain due to the necessary **suspension** of your **operations** caused by action of civil authority that prohibits access to a **location**. Such prohibition of access to such **location** by a civil authority must:

> (1) Arise from *direct physical loss or damage to property* other than at such **location**; and

> (2) Be caused by or result from a **covered cause of loss**; and

> (3) Occur within the number of miles stated in the Declarations from such **location [in this case, 1 mile]**.

Policy at 18 (bolded emphasis in original; italicized emphasis added).

### iii.  Delayed Occupancy Coverage

Delayed Occupancy Coverage states:

We will pay for the actual loss of **business** income and necessary **extra expenses** you sustain due to the necessary **suspension** of your **operations** during the **period of restoration** arising from *direct physical loss or damage to property* at a **location** caused by or resulting from a **covered cause of loss**.

Policy at 18 (bolded emphasis in original; italicized emphasis added).

### iv.  Dependent Property Coverage

Dependent Property Coverage states: "We will pay for the actual loss of **business income** and necessary **extra expense** you sustain due to the necessary **suspension of operations** during the **period of restoration** at a **location**." Policy at 18 (bolded emphasis in original). The provision further states that "[t]he **suspension** must be due to *direct physical loss or damage* at the **location** of a **dependent property**, situated inside or outside of the Coverage Territory, caused by or resulting from a **covered cause of loss**." *Id.* (bolded emphasis in original; italicized emphasis added).

### v.  Loss Adjustment Expense Coverage

Loss Adjustment Coverage states: "If a covered loss or damage occurs under this Coverage Form, then we will pay the necessary loss adjustment expenses you incur that would not have been incurred had there not been a covered loss." Policy at 3.

As discussed below, Plaintiffs have failed to plead facts demonstrating that any of these coverages have been triggered.

## II.  **Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Though the Court must accept Plaintiffs' factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.* The Court need not accept "legal conclusions couched as fact." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).

## III.   <u>Argument</u>

### a.   **Plaintiffs Fail to Plead Facts Establishing Breach of Contract**

#### i.   **Interpretation of Insurance Contracts is a Matter of Law**

"Under Massachusetts law, 'the proper interpretation of an insurance policy is a matter of law to be decided by a court, not a jury.'" *U.S. Liab. Ins. Co. v. Benchmark Const. Servs., Inc.*, 797 F.3d 116, 119 (1st Cir. 2015) (quoting *Boazova v. Safety Ins. Co.*, 462 Mass. 346. 350 (2012)). "As with any contract, the court 'must construe the words of the policy in their usual and ordinary sense.'" *Benchmark Const. Servs., Inc.*, 797 F.3d at 119 (quoting *Boston Gas Co. v. Century Indem. Co.*, 454 Mass. 337, 356 (2009)). In "Massachusetts insurance-coverage decisions, . . . the insured[] ha[s] the initial burden of showing that the case involves a generally covered risk under the policy.  Should the insured[] accomplish that task, the burden shifts to the insurer . . . to show an exclusion applies." *Stor/Gard, Inc. v. Strathmore Ins. Co.*, 717 F.3d 242, 247 (1st Cir. 2013). Thus, to survive a motion to dismiss, it is incumbent on the Plaintiffs to assert well-pleaded, non-conclusory facts that, if true, would invoke coverage.

### ii.   The Policy's Plain Language Does Not Provide for Coverage Because Plaintiffs Have Not Established Direct Physical Loss or Damage to Any Property

The instant case involves property insurance; that is, insurance which covers direct physical damage to property. Tangible damage to fixtures and improvements necessitating repair or replacement due to fire, hail, or hurricanes are common examples of perils covered by property insurance.

For Business Income and Extra Expense, Civil Authority, Delayed Occupancy, and Dependent Property, and Loss Adjustment Expense coverages to apply, Plaintiffs must plead facts revealing "direct physical loss or damage to property." *See* Compl. ¶¶ 112, 118, 121, 123, 127 (stating requirement of *direct physical loss or damage to property*). Yet, Plaintiffs assert no factual allegations in their Amended Complaint which rise to the level of actual, demonstrable *physical loss or damage to property*. Plaintiffs make sweeping statements that "[t]he COVID-19 virus is a cause of real physical loss of or damage to property" and that "[b]usiness establishments like Plaintiffs' Covered Properties (restaurants) are highly susceptible to being or becoming affected by the presence of the virus" which, even if taken as true, do not establish a nexus to tangible and identifiable damage to their premises. Compl. ¶¶ 41, 43.

When interpreted in its "usual and ordinary sense," *see Benchmark Const. Servs., Inc.*, 797 F.3d at 119, "physical" means "[o]f, relating to, or involving material things; pertaining to real, tangible objects." Black's Law Dictionary (11th ed. 2019). The Amended Complaint contains no factual allegations that "real, tangible objects" or "material things" such as floors, walls, countertops, tables, etc. were physically damaged at Plaintiffs' properties or any other property as a direct result of Social Distancing Orders or COVID-19. While Plaintiffs assert that aerosols, cooper, cardboard, plastics, and stainless steel are "common objects found in Plaintiffs'

8

insured premises" to which the COVID-19 virus may adhere, Compl. ¶ 41, Plaintiffs fail to establish any physical loss or damage to those objects. Therefore, Plaintiffs have failed to plead facts demonstrating that their loss of income triggered the Business Income and Extra Expenses, Civil Authority, and Delayed Occupancy Coverages. Likewise, the Amended Complaint contains no factual allegations demonstrating that there was "direct physical loss or damage at the location of a dependent property" which caused a suspension of Plaintiffs' operations necessary to trigger Dependent Property Coverage. *See* Policy at 18. Finally, the absence of direct physical damage or loss means that there is no "covered loss or damage," making Loss Adjustment Expense Coverage inapplicable. *See* Policy at 3.

### iii. Massachusetts Case Law Supports Dismissal

Plaintiffs seek to divorce the Policy's loss of business income from its threshold *direct physical loss or damage to property* underpinning. The Social Distancing Order that Plaintiffs note caused their change in operations and therefore business income cannot equate to physical damage to fixtures and improvements. "Several Massachusetts courts, as well as others elsewhere, have interpreted the phrase 'direct physical loss' in a . . . narrow way." *Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co.*, 321 F. Supp. 2d 260, 264 (D. Mass. 2004) (citing cases). The *Crestview Country Club, Inc.* decision is illuminating because it contrasts intangible losses in value to actual, physical damage to property for which coverage is provided. In *Crestview Country Club, Inc.*, a country club sustained damage to insured trees following a windstorm. *Id.* at 262. The policy provided coverage for "direct physical loss or damage to golf course grounds," and the insurer paid to replace the destroyed trees. *Id.* at 263. The country club then submitted a second claim with the insurer for costs associated with redesigning a hole on the

9

golf course to "restore its slope, rating, and character" in the absence of a large, destroyed tree. *Id.*

The court granted the insurer's motion for summary judgment, holding that the redesign efforts did not fall within policy coverage. In doing so, the court rejected the country club's argument that "direct physical loss or damage" is not limited to tangible loss or damage. *See id.* at 264. Instead, the court held that "'physical' must be given its plain meaning—e.g., 'material'. . . —and an intangible loss in value of a golf course because of a change in its slope rating, difficulty, etc., does not fit within this meaning." *Id.*; *see Welch v. CNA Ins. Co.*, No. 932119, 1996 WL 1353314, at *3 (Mass. Super. Ct. Aug. 13, 1996) (holding that "[a] loss of value . . . is clearly not intended to be within the scope of the insurance contract" where "the property coverage under . . . the policy is limited to direct physical loss to a dwelling, structure on the premises, or personal property"). As the *Crestview* court explained, "once physical damage is fixed and paid for by the insurer, any diminution in value, income or use is not 'physical damage' and, hence, not recoverable under language similar to the clause at issue here." 321 F. Supp. 2d at 265.

### iv. Fully Developed Case Law in Other Jurisdictions Supports Dismissal Under Same Circumstances

Over 100 courts across the country have granted motions to dismiss COVID-19 related Complaints seeking property insurance coverage. *See* Appendix. The predominant basis given for these dismissals is because the policyholders cannot demonstrate tangible loss or damage to any property such that the property required repairs or replacement. For example, a federal district court in California dismissed breach of contract, bad faith, and state law claims brought by a restaurant policyholder against its insurer relating to Social Distancing Orders. *See generally 10E, LLC v. Travelers Indem. Co.*, No. 20-cv-04418-SVW-AS, 2020 WL 5359653

(C.D. Cal. Sept. 2, 2020) ("10E I"); *see 10E, LLC v. Travelers Indem. Co.*, No. 2:20-cv-04418-SVW-AS, 2020 WL 6749361 (C.D. Cal. Nov. 13, 2020) (dismissing Second Amended Complaint without further leave to amend) ("10E II"). There, the restaurant was restricted from in-person dining and limited to delivery and takeout per a local order. *See* 10E I, at *1. The policy at issue provided coverage for "business income lost when business operations are suspended from a covered cause of loss, but the suspension must be caused by direct physical loss of or damage to property at the described premises." *Id.* (internal quotation omitted). In dismissing the complaint, the court held that "[a]n insured cannot recover by attempting to artfully plead temporary impairment to economically valuable use of property as physical loss or damage." *Id.* at *5. There, as here, the plaintiff "only plausibly allege[d] that in-person dining restrictions interfered with the use or value of its property – not that the restrictions caused direct physical loss or damage." *Id.*

Similarly, a federal district court in Kansas dismissed a breach of contract claim brought by a wholesale distributor against an insurer relating to government social distancing orders. *See generally Promotional Headwear Int'l v. Cincinnati Ins. Co.*, No. 20-cv-2211-JAR-GEB, 2020 WL 7078735 (D. Kan. Dec. 3, 2020). The policy at issue provided coverage for "direct loss to Covered Property at the premises caused by or resulting from any Covered Cause of Loss." *Id.* at *2. In dismissing the insured's claim, the court held that "direct loss to Covered Property under the Policy unambiguously requires more than mere diminution in value or impairment of use of the property." *Id.* at *7. The court further noted that "even assuming that the virus physically attached to covered property, it did not constitute the direct, physical loss or damage required to trigger coverage because its presence can be eliminated . . . [with] routine cleaning and disinfecting . . . Plaintiff seeks purely economic damages associated with the suspension of its

11

operations due to COVID-19; it does not claim property damage due to the presence of COVID-19 in its buildings." *Id.* at *8; *see O'Brien Sales & Mktg, Inc. v. Trans. Ins. Co.*, No. 20-cv-02951-MMC, 2021 WL 105772, at *4 (N.D. Cal. Jan. 12, 2021) ("[E]ven assuming, arguendo, O'Brien had alleged COVID-19 has been, at some point, physically present in the covered property, 'the presence of the virus itself, or of individuals infected with the virus, at O'Brien's business premises or elsewhere does not constitute direct physical loss of or damage to property.' Indeed, . . . contaminated surfaces can be disinfected and cleaned.").

A federal court examining a COVID-19 insurance claim in the context of a dental office summarized the problem with Plaintiffs' allegations most succinctly:

> [E]ven if the Court eschewed the physical damage requirement and considered the mere presence of COVID-19 enough to cause "direct physical loss of or physical damage to" the offices, Plaintiffs still have not stated a facially plausible claim. . . . [T]he Amended Complaint does not allege that COVID-19 ever actually entered into the dental offices. The Amended Complaint likewise does not point to any instance of an employee or patient contracting the virus where it was traced to the properties. Nor do Plaintiffs present the Court with a reliable method for determining if the virus could be detected in the offices. They instead rely solely on speculation: *i.e.*, due to the exceedingly high number of COVID-19 cases in Georgia and ease of person-to-person transmission during the relevant time period, COVID-19 ***must*** have somehow found its way into the offices. The Court does not discount that this could, theoretically, be true. Neither does the Court take lightly the dangers presented by COVID-19, as well as the exponential growth of cases present in Georgia and this district. But the law is clear: Plaintiffs cannot rely on conjecture and speculation to survive a motion to dismiss.

*Johnson v. Hartford Fin. Servs. Grp.*, No. 1:20-cv-02000-SDG, 2021 WL 37573, at *5 (N.D. Ga. Jan. 4, 2021); *see also* Appendix (citing cases).

### v. Plaintiffs Admit That Their Losses Were Not Covered by an Insurable Event

Plaintiffs acknowledge that their premises were closed as a result of the Social Distancing Orders. *See* Compl. ¶ 69 ("To comply with the emergency Orders, Plaintiffs were required to slow down and eventually cease their business activities, most importantly the provision of on-

WEST\292596348.4

premises dining and alcohol services."). Under the Social Distancing Orders, restaurants were considered essential, but their services were limited to takeout and delivery.[1] Unlike Plaintiffs' COVID-19 allegations, which are facially conclusory and speculative, Plaintiffs' assertion that they suffered lost business income because of the Social Distancing Orders—not physical property damage or because fixtures required repairs or replacement—is correct and therefore fatal to their claims.

### vi.   Interpretation of "Physical Loss or Damage" to Encompass Non-Physical Losses Would Render Policy Language Meaningless

That the Policy provides lost income coverage only during the "period of restoration" (i.e. the period of repairs or replacement) demonstrates that broken, torn, or destroyed property is required instead of mere economic loss for coverage. A virus can be cleaned from surfaces with a mere Lysol wipe or soap, which does not incite repairs or replacement of property. *See Mama Jo's Inc. v. Sparta Ins. Co.*, No. 17-cv-23362-KMM, 2018 WL 3412974 (S.D. Fla. June 11, 2018), *aff'd* 823 F. App'x 868 (11th Cir. 2020) ("[C]leaning is not considered direct physical loss. . . . Here, the restaurant was not 'uninhabitable' or 'unusable.' . . . The fact that the restaurant needed to be cleaned more frequently does not mean Plaintiff suffered a direct physical loss or damage."). The "period of restoration" as defined by the Policy "means the period of time that begins immediately after the time of direct physical loss or damage caused by or resulting from a covered cause of loss to a property" and end on "the date when such property at the location should be *repaired, rebuilt, or replaced* with reasonable speed and like kind of quality" or "the date when business is resumed at a new permanent location," whichever is earlier. Policy at 58. To interpret "physical loss or damage" to include non-physical loss which

---

[1] *See* Office of the Governor, *COVID-19 State of Emergency: Limits on Gatherings*, accessible at
https://www.mass.gov/info-details/covid-19-state-of-emergency (collecting current and lapsed Social Distancing Orders).

need not be "repaired, rebuilt, or replaced" would render the "period of restoration" requirement meaningless. Case law makes clear that "[i]nsurance policies should be construed as a whole 'without according undue emphasis to any particular part over another.'" *Utica Mut. Ins. Co. v. Weathermark Invs., Inc.*, 292 F.3d 77, 80 (1st Cir. 2002) (quoting *Mission Ins. Co. v. U.S. Fire Ins. Co.*, 401 Mass. 492, 497 (1988)); *see also Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 154, 160 (1st Cir. 2005) (acknowledging the "hoary adage that a contract must be read as a whole").

Federal courts addressing insurance claims based on COVID-19 social distancing orders that are designed to ward off the imminent threat of COVID-19 have reached the same conclusion. *See, e.g.*, *ATCM Optical, Inc. v. Twin City Fire Ins.*, No. 2:20-cv-04238-CFK, 2021 WL 131282, at *5 (E.D. Pa. Jan. 14, 2021) ("[C]overage for actual or threatened COVID-19 contamination makes little sense in connection with the Period of Restoration language[.] . . . Simply put, there is nothing to repair, rebuild, or replace. Once the government orders lifted, Omega's locations reopened (albeit with restrictions and limited capacity) without any repairs, replacements, or rebuilding."); *Santo's Italian Café LLC v. Acuity Ins. Co.*, No. 1:20-cv-01192, 2020 WL 7490095, at *10 (N.D. Ohio Dec. 21, 2020) ("The Court agrees with Acuity that construing 'direct physical loss' or 'direct physical damage' to cover intangible losses, such as the economic losses Santo's seeks to recover, would render large parts of the 'period of restoration' definition nonsensical because intangible losses cannot be repaired, rebuilt, or replaced.").

As explained above, courts in Massachusetts have made clear that "physical loss or damage" does not include "intangible loss." *See Crestview Country Club, Inc.*, 321 F. Supp. 2d at 264. In *Tocci Building Corp. v. Commonwealth Insurance Co.*, an insured was required to fix

a portion of a retaining wall which was damaged as a result of rainfall. No. 0202261, 2007 WL 1830829, at *1 (Mass. Super. Ct. Apr. 23, 2007), *aff'd* 71 Mass. App. Ct. 1120 (2008). Seeing the damage to the retaining wall prior to repair, a town inspector deemed the wall unsafe. *Id.* The insured had to wait over three months for approval from the town to complete repairs. *See id.* The court examined the insured's business interruption coverage, which included language providing coverage where "*buildings ... damaged* by a peril insured against ... and *demolition* is necessitated[,]" and held that "the provision applies only to repairs and reconstruction necessitated by damage, not those required because of the insured's failure to comply with local ordinances." *Id.* at *7 (emphasis in original).

### i. Distinguishable Case Law

Plaintiffs assert that Defendants "did not consider or acknowledge that Massachusetts case law has recognized the 'direct physical loss of or damage to' language as ambiguous in cases such as here where dangerous gases or other such substances entered the building." Compl. ¶ 142. This allegation is nothing more than smoke and mirrors. The case to which Plaintiffs allude, *Essex Insurance Company v. BloomSouth Flooring Corp.*, 562 F.3d 399 (1st Cir. 2009), is inapplicable to Plaintiffs' situation. There, the First Circuit held that an odor emanating from carpeting that was just installed "can constitute physical injury to property under Massachusetts law, and also that allegations that an unwanted odor permeated the building and resulted in a loss of use of the building are reasonably susceptible to an interpretation that physical injury to property has been claimed." *Id.* at 406. The First Circuit relied on two unpublished Massachusetts Superior Courts cases, acknowledging that "[t]he Massachusetts Supreme Judicial Court has not determined whether the presence of a permeating odor may constitute 'physical injury.'" *Id.* at 404-05. In the first case, *Matzner v. Seaco Insurance Co.*, the court found that

15

"direct physical loss or damage" was ambiguous and that "carbon-monoxide contamination constitutes 'direct physical loss of or damage to' property." No. CIV. A. 96-0498-B, 1998 WL 566658, at \*3-4 (Mass. Super. Ct. Aug. 12, 1998). In the second case, *Arbeiter v. Cambridge Mutual Fire Insurance Co.*, the court held that fumes for an oil spill at the insureds' home "are a physical loss which attaches to the property." No. 9400837, 1996 WL 1250616, at \*2 (Mass. Super. Ct. Mar. 15, 1996).

*Essex Ins. Co.* and the cases on which it relies are distinguishable because Plaintiffs cannot trace COVID-19 to any of their properties. In *Essex Insurance Co.*, the odor was directly traceable to damage to the carpeting. *See* 562 F.3d at 404-05. Similarly, the carbon monoxide in *Matzner* was traceable to a damaged chimney, *see* 1998 WL 566658, at \*3, and the oil spill in *Arbeiter* was tied to the floor. *See* 1996 WL 1250616, at \*2. Plaintiffs make no allegations that there was physical loss or damage due to COVID-19 emanating from and needing repairs to carpeting, a chimney, the floor, or any surface for that matter. Rather, Plaintiffs merely contend that COVID-19 exists everywhere and leave it at that. *See* Compl. ¶¶ 37-38, 43-44. The possible existence of a virus does not equate to direct physical destruction or damage to the tables and chairs that remain unused while temporary Social Distancing Orders are in effect. The Amended Complaint lacks the causation found in *Essex Ins. Co.* and the cases on which it relies. To extend the logic of these cases to physical damage not actually realized would eviscerate any remaining distinction between physical and non-physical loss or injury.

### viii.   Civil Authority Coverage is Inapplicable

Plaintiffs incorrectly assert that the Social Distancing Orders cited in the Amended Complaint trigger Civil Authority Coverage. The Policy requires that a civil authority "prohibit[] access to a location" and that the prohibition "[a]rise from direct physical loss or damage to

16

property other than at such location; and [b]e caused by or result from a **covered cause of loss**; and [o]ccur within [1 mile] from such **location**." Policy at 18 (bolded emphasis in original). The Amended Complaint does allege that access to Plaintiffs' premises was "prohibited." Rather, the Amended Complaint acknowledges that "[b]eginning March 15 and continuing through various phases, Plaintiffs were not permitted to provide on-premises dining services, operating in some situations with takeout and delivery services only." Compl. ¶ 71. As Plaintiffs acknowledge, they were never prohibited from entering their premises. For takeout and delivery services to occur, employees must necessarily enter the premises. Absent such a prohibition, Civil Authority Coverage is not applicable.

Numerous courts that have considered COVID-19 insurance cases agree. For example, in *4431, Inc. v. Cincinnati Insurance Cos.*, the court held that several restaurants seeking coverage relating to COVID-19 closures were not entitled to Civil Authority Coverage: "[I]t is clear that Plaintiffs' ability to continue limited takeout and delivery operations at the premises precludes coverage under the Civil Authority provision: a prohibition on access to the premises, which is a prerequisite to coverage, is not present." No. 5:20-cv-04396, 2020 WL 7075318, at *13 (E.D. Pa. Dec. 3, 2020). Similarly, in *Brian Handel D.M.D., P.C. v. Allstate Insurance Co.*, the court held that a dentist who was required to close his practice for non-emergency procedures was not entitled to Civil Authority Coverage, in part, because "the Governor's orders limit, rather than prohibit, access to the property. Absent facts of direct physical loss or prohibited access to the property, plaintiff cannot sustain a claim for coverage under the civil authority provision of this policy." No. 20-3198, 2020 WL 6545893, at *4 (E.D. Pa. Nov. 6, 2020).

But even if access to Plaintiffs' premises were prohibited, Civil Authority Coverage would still not be triggered because the Amended Complaint does not allege physical loss or

WEST\292596348.4

damage to neighboring properties. At most, the Amended Complaint relies on a conclusory allegation that the Social Distancing Orders "were put in place due to the actual presence of the COVID-19 virus at properties other than the Covered Properties within one mile of the Covered Properties." Compl. ¶ 120. As the court in *Mudpie, Inc. v. Travelers Casualty Insurance Co.* explained, however, Plaintiffs' "allegations establish that the government closure orders were intended to prevent the spread of COVID-19. Because the orders were preventative – and absent allegations of damage to adjacent property – the complaint does not establish the requisite causal link between prior property damage and the government's closure order." No. 20-cv-03213-JST, 2020 WL 5525171, at *7 (N.D. Cal. Sept. 14, 2020).

### b. Fireman's Decision to Deny Plaintiffs' Claim was Objectively Reasonable and Therefore Not in Bad Faith

"Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 n.7 (1st Cir. 2017). "The covenant may not, however, create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005) (quoting *UNO Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004)).

For the reasons detailed above, Fireman's denied Plaintiffs' claim on an objectively reasonable basis—namely, the loss alleged by Plaintiffs was caused by Social Distancing Orders and not physical loss or damage to Plaintiffs' properties or any other property. The objective reasonableness of Fireman's denial is supported by the overwhelming majority of court decisions which have denied similar COVID-19 related insurance claims. *See, e.g.*, *Pez Seafood DTLA, LLC v. Travelers Indem. Co.*, No. CV 20-4699-DMG (GJSx), 2021 WL 23455,

18

at *8 (C.D. Cal. Jan. 20, 2021) ("Plaintiff is not entitled to coverage under the Policy as a matter

of law. Accordingly, Traveler's denial of coverage was not a breach a contract nor a breach of

the implied covenant of good faith and fair dealing.");  *Diesel Barbershop, LLC v. State Farm

Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *3 (W.D. Tex. Aug. 13, 2020)

(dismissing breach of contract and bad faith claims brought against insurer for failure to provide

coverage for loss due to COVID-19 social distancing orders); *see also* Appendix.

### c.   Plaintiffs Fail to Adequately Allege an Unfair or Deceptive Practice

Plaintiffs allege that "Defendants' conduct . . . constitute[s] knowing unfair and deceptive

acts and practices in violation of G. L. c. 93A . . . and G. L. c. 176D." Compl. ¶ 146. Plaintiffs

"claim that G.L. c. 93A, § 11 was violated by its primary insurers' violations of certain provisions

of G.L. c. 176D, § 3, cl. 9, is of significance only to the extent that the alleged wrongful conduct

was a violation of G.L. c. 93A, § 2 ("unfair or deceptive acts or practices")." *Kiewet Const. Co. v.

Westchester Fire Ins. Co.*, 878 F. Supp. 298, 302 (D. Mass. 1995) (quoting *Polaroid Corp. v.

Travelers Indemn. Co.*, 414 Mass. 747, 754 (Mass. 1993)). Here, the Amended Complaint

contains allegations which, even if taken as true, do not demonstrate an unfair or deceptive

practice. Plaintiffs allegations can be boiled down to two issues: failure to investigate Plaintiffs'

claim and failure to pay on Plaintiffs' claims. In both instances, Fireman's did not violate Mass.

Gen. Laws ch. 176D, § 3(9) and, subsequently, did not violate Mass. Gen. Laws ch. 93A.

An insurer "d[oes] not have an independent duty to investigate claims that were not

reasonably susceptible of an interpretation that states or roughly sketches a claim covered by its

policy." *Clarendon Nat'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, 954 F.3d 397, 407 (1st Cir.

2020); *see Metro. Prop. & Cas. Ins. Co. v. Morrison*, 460 Mass. 352, 357-58 (2011) ("[W]hen the

allegations in the underlying complaint lie expressly outside the policy coverage and its purpose,

the insurer is relieved of the duty to investigate or defend the claimant.") (internal quotations omitted). As explained above, Plaintiffs sought coverage for a claim without stating, suggesting, or otherwise alleging direct physical loss or damages to their premises and therefore failed to meet their "initial burden of showing that the case involves a generally covered risk under the policy." *See Stor/Gard, Inc. v. Strathmore Ins. Co.*, 717 F.3d 242, 247 (1st Cir. 2013). Facially, this brought Plaintiffs' claim outside of the terms of the Policy, and Fireman's had no obligation to investigate prior to denying the claim and refusing payment.

### d. Alternatively, Plaintiffs Have Failed to Adequately Allege Claims Against AGR

Plaintiffs allege that both Fireman's and AGR's logo and brand appear on the Policy. Compl. ¶¶ 10, 11. Plaintiffs also allege that "[Fireman's] is controlled operationally and financially by [AGR]" and that "decisions related to policy terms, whether to accept an insurance contract, pricing, underwriting, reinsurance, and strategic responses to COVID-19, including the issuance of blanket denials were made by [AGR] and [Fireman's]." Compl. ¶¶ 13, 16. The Policy makes clear, however, that Fireman's is the issuing company. *See* Policy at 1 ("Issuing Company: Fireman's Fund Insurance Company (AN ALLIANZ COMPANY)"). The Policy does not state that AGR is an issuing company or otherwise identify AGR as an issuing company.

If, contrary to the abundant case law cited above, there is coverage for Plaintiffs' claims, Fireman's is obligated to make payment, not AGR. "Under Massachusetts law, a breach of contract claim requires the plaintiff to show that . . . a valid contract between the parties existed." *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013). Courts in this district have acknowledged that defendants who are not parties to insurance contracts cannot be subject to breach of contract claims. *See, e.g.*, *Fernando v. Fed. Ins. Co.*, No. CV 19-10504-MBB, 2019 WL 2267168, at *8 (D. Mass. May 28, 2019) ("The Policy identifies Federal as the contracting party that issued the

Policy. Chubb Corp., Chubb National, and Chubb New Jersey are all separately incorporated entities. Absent a basis to pierce the corporate veil, they are not parties to the Policy and, hence, are not liable for its breach.").

To the extent that Plaintiffs suggest that AGR can incur liability as the parent company of Fireman's, "a parent of an insurance company that issued an insurance policy is not liable because it did not enter into a contract with the insured." *Id.* Other than a conclusory and brief statement that AGR exercises pervasive control over Fireman's, Plaintiffs make no allegations supporting veil piercing. Similarly, Plaintiffs' allegations do not support the conclusion that there is "confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." *Id.* at *9 (quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968)). At the bottom, AGR is not party to the Policy and consequently all claims against AGR should be dismissed.

### e.  **Amendment is Futile**

This Court should not allow Plaintiffs to amend their Complaint a second time because doing so is futile. "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). Plaintiffs have established that they cannot state a claim upon which relief can be granted because Plaintiffs cannot allege direct physical loss or damage to property in a manner that is non-conclusory and non-speculative. *See Pez Seafood DTLA, LLC*, 2020 WL 23455, at *8 (denying leave to amend because "Plaintiff cannot establish coverage under the Policy for loss of business income due to COVID-19 or civil authority orders enacted due to COVID-19").

IV. **Conclusion**

      For the reasons set out above, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety. In the event that such relief is not granted, Defendants alternatively request that the Amended Complaint be dismissed as to AGR, who is improperly named in this matter.

Dated: February 8, 2021

By their attorneys,

DLA PIPER LLP (US)

By:    */s/ Bruce Falby*
Bruce Falby (BBO No. 544143)
Jamie Kurtz (BBO No. 703588)
DLA PIPER LLP (US)
33 Arch Street, 26th Floor
Boston, MA 02110-1447
(617) 406-6000 (*telephone*)
(617) 406-6100 (*facsimile*)
*bruce.falby@dlapiper.com*
*jamie.kurtz@dlapiper.com*

*Counsel for Fireman's Fund Insurance Company and Allianz Global Risks United States Insurance Company*

**CERTIFICATE OF SERVICE**

      I, Jamie Kurtz, hereby certify that a true copy of the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent by first-class mail to those indicated as non-registered participants on February 8, 2021.

      */s/ Jamie Kurtz*

WEST\292596348.4