UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-11497-RGS

AMERICAN FOOD SYSTEMS, INC. et al.

v.

FIREMAN'S FUND INSURANCE COMPANY and
ALLIANZ GLOBAL RISKS UNITED STATES INSURANCE COMPANY

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

March 24, 2021

STEARNS, D.J.

Plaintiffs[1] bring this diversity action against their commercial insurers, defendants Fireman's Fund Insurance Company and Allianz Global Risks United States Insurance Company based on defendants' denial of property insurance coverage for losses arising from the COVID-19 pandemic. Defendants move to dismiss the case for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).  For the following reasons, the court will allow the motion.

---

[1] Plaintiffs include American Food Systems, Inc.; Old Andover Restaurant, Inc. d/b/a Grassfield's Food & Spirit; Old Waltham Restaurant, Inc. d/b/a Grassfield's Food & Spirit; Old Arlington Restaurant, Inc. d/b/a Jimmy's Steer House; Old Saugus Restaurant Inc. d/b/a Jimmy's Steer House; Old Shrewsbury Restaurant, Inc. d/b/a Jimmy's Tavern & Grill; and Old Lexington Restaurant, Inc. d/b/a Mario's Italian Restaurant.

## BACKGROUND

Plaintiffs operate restaurant and retail sales businesses throughout Massachusetts, including family-style and upscale restaurants and an affiliated production and distribution office. *See* Am. Compl. (Dkt # 22) ¶¶ 1, 2-8, 59, 60-67.  Starting in March of 2020, "state and local authorities intervened [in the COVID-19 pandemic] through a series of emergency [o]rders." *Id.* ¶ 27.  "To comply with the emergency [o]rders, [p]laintiffs were required to slow down and eventually cease their business activities, most importantly the provision of on-premises dining and alcohol service." *Id.* ¶ 69.  Operating with these restrictions caused plaintiffs to "suffer[] substantial losses of food and perishable inventories" and to incur further expense through "additional cleaning and decontamination at the Covered Properties, the addition of plexiglass, the reconfiguration of the interior of its business, and other actions such as paper menus and other modifications." *Id.* ¶¶ 71-73.

Prior to the onset of the COVID-19 pandemic, plaintiffs had purchased an all-risk commercial property insurance policy from defendants. *Id.* ¶ 20; *see generally* Ex. A to Am. Compl. (Policy) (Dkt # 22-1).[2]  The Policy includes

---

[2] "[I]n reviewing a Rule 12(b)(6) motion, [a court] may consider documents the authenticity of which are not disputed, documents central to the plaintiff's claim, and documents sufficiently referred to in the

various forms of coverage,[3] all of which are, as relevant here, limited to a "covered cause of loss," defined as "risks of *direct physical loss or damage*

---

complaint." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007). As plaintiffs attach the Policy as an exhibit to the Amended Complaint and cite to it within their allegations, the court will consider it here.

[3] Under "Business Income and Extra Expense Coverage" and "Delayed Occupancy Coverage," defendants agree to "pay for the actual loss of **business income** and necessary **extra expense** [plaintiffs] sustain due to the necessary **suspension** of . . . **operations** . . . arising from *direct physical loss or damage to* property . . . resulting from a ***covered cause of loss***." Policy §§ II(A), (V)(E)(3)(a) (italicized emphases added).

"Dependent Property Coverage" further provides that defendants will pay for such a suspension of operations "due to *direct physical loss or damages* at the **location** of a **dependent property** . . . caused by or resulting from a ***covered cause of loss***." *Id.* § (V)(4)(a) (italicized emphases added).

"Civil Authority Coverage" states that defendants

will pay for the actual loss of **business** income and necessary **extra expense** [plaintiffs] sustain due to the necessary **suspension** of . . . **operations** caused by action of civil authority that prohibits access to a **location**. Such prohibition of access to such **location** by a civil authority must: (1) Arise from *direct physical loss or damage to* property other than at such **location**; and (2) Be caused by or result from a ***covered cause of loss*** . . . .

*Id.* § (V)(E)(2)(a) (italicized emphases added).

Finally, under "Loss Adjustment Expense Coverage," defendants stipulate: "If a *covered loss or damage* occurs under this Coverage Form, then we will pay the necessary loss adjustment expenses you incur that would not have been incurred had there not been a *covered loss*." Am. Compl. ¶ 127 (emphases added).

not excluded or limited" in the Policy.   Policy § (XIV)(A)(13) (emphasis added).

"On March 16, 2020, Plaintiffs provided their first notice of loss to Defendants and showed they had incurred business income losses during the policy term."   Am. Compl. ¶ 91.   Defendants denied the claim on July 23, 2020, without, according to plaintiffs, "any meaningful or honest investigation of the facts or contractual terms." *Id.* ¶ 92.   Plaintiffs allege that "[d]efendants summarily and arbitrarily asserted that the . . . losses were not caused from direct physical loss of or damage to covered property, but provided no basis therefore." *Id.* ¶ 93.

This lawsuit ensued.   By way of the Amended Complaint, dated January 14, 2021, plaintiffs bring state-law claims for breach of contract for failure to provide coverage under the Policy for pandemic-related losses (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and violation of the Massachusetts Unfair Trade and Practices Act, Mass. Gen. Laws ch. 93A, § 11 (Count III).   Defendants moved to dismiss on February 8, 2021.

## DISCUSSION

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555 (internal citations omitted). A claim is facially plausible if the factual allegations in the complaint "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The interpretation of an insurance policy is a question of law for the court. *See Ruggerio Ambulance Serv. v. Nat'l Grange Mut. Ins. Co.*, 430 Mass. 794, 797 (2000). Under Massachusetts law, the court "construe[s] an insurance policy under the general rules of contract interpretation, beginning with the actual language of the polic[y], given its plain and ordinary meaning." *Easthampton Congregational Church v. Church Mut. Ins. Co.*, 916 F.3d 86, 91 (1st Cir. 2019), quoting *AIG Prop. Cas. Co. v. Cosby*, 892 F.3d 25, 27 (1st Cir. 2018). Although "ambiguous words or provisions are to be resolved against the insurer," *City Fuel Corp. v. Nat'l Fire Ins. Co. of Hartford*, 446 Mass. 638, 640 (2006), "provisions [that] are plainly and definitely expressed in appropriate language must be enforced in accordance with [the policy's] terms," *High Voltage Eng'g Corp. v. Fed. Ins. Co.*, 981

F.2d 596, 600 (1st Cir. 1992), quoting *Stankus v. N.Y. Life Ins. Co.*, 312 Mass. 366, 369 (1942).[4]

This dispute turns on the meaning of the phrase "direct physical loss of or damage" to property, which cabins the Policy's scope of coverage. Plaintiffs allege in the Amended Complaint that, because COVID-19 "was ubiquitous in all parts of . . . Massachusetts where Plaintiffs' properties are located," it "was present on all of [their] insured properties" or "there was an imminent risk of on-site viral presence at all . . . times," which altered "[t]he material dimensions of [their] property . . . through microscopic changes." Am. Compl. ¶¶ 38, 45, 52.[5]  In moving to dismiss, defendants argue that

---

[4] Contrary to plaintiffs' argument that "[c]ontract interpretation is more suited for summary judgment than on a motion to dismiss because discovery concerning the interpretation . . . may be relevant to determining whether terms are ambiguous," Opp'n to Mot. (Opp'n) (Dkt # 32) at 4 n.6, contractual language is only ambiguous "where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken," *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1083 (1st Cir. 1989); *see also Basis Tech. Corp. v. Amazon.com, Inc.*, 71 Mass. App. Ct. 29, 36 (2008) (the preliminary question of the existence of an ambiguity is one of law for the court to determine).

[5] For purposes of this motion, the court need not determine whether this theory proffers more than mere "labels and conclusions" or "naked assertions devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678. *But see Promotional Headwear Int'l v. Cincinnati Ins. Co.*, 2020 WL 7078735, at *8 (D. Kan. Dec. 3, 2020) (finding similar allegations concerning the presence of COVID-19 speculative and granting the motion to dismiss).

"[p]laintiffs take a kitchen sink approach, reciting a litany of potential causes of loss or damage that are entirely speculative and conclusory . . . yet still [are] unable to demonstrate direct physical loss or damage necessary to establish coverage."  Mem. of Law in Supp. of Mot. to Dismiss (Mot.) (Dkt # 30) at 3.  Plaintiffs respond that "[o]n-site contamination is physical and covered under Massachusetts law."  Opp'n at 2.

The court starts with the plain meaning of the Policy's relevant language: "direct physical loss of or damage."[6]  Here, the term "physical," which "involv[es] the *material* universe and its phenomena" and "pertain[s] to real, *tangible* objects," is an adjective modifying "loss," defined as, *inter alia*, "the disappearance or diminution of value."  Black's Law Dictionary (11th ed. 2019) (emphases added).  The term "damage" also entails "[l]oss or injury to person or property; esp., physical harm that is done to something or to part of someone's body." *Id.*  Taken together, these terms require some enduring impact to the actual integrity of the property at issue.  In other words, the phrase "direct physical loss of or damage" does not encompass

---

[6] Plaintiffs also allege that the Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of tangible property that is not physically injured."  Opp'n at 8.  The court's analysis is consistent with, and applies with equal force to, this language as well.

transient phenomena of no lasting effect, much less real or imagined reputational harm.

This interpretation aligns with Massachusetts law. *See Harvard St. Neighborhood Health Ctr., Inc. v. Hartford Fire Ins. Co.*, 2015 WL 13234578, at *8 (D. Mass. Sept. 22, 2015) ("Intangible losses do not fit within th[e] definition [of 'direct physical loss'] . . . ."); *Crestview Country Club, Inc. v. St. Paul Guardian Ins. Co.*, 321 F. Supp. 2d 260, 264 (D. Mass. 2004) (collecting cases holding that diminution in value is not a "direct physical loss"); *Pirie v. Fed. Ins. Co.*, 45 Mass. App. Ct. 907, 908 (1998) (holding that an internal defect in a structure, such as the presence of lead paint, is not a "direct physical loss"). In *Verveine Corp. v. Strathmore Ins. Co*, No. 2020-01378 (Mass. Super. Ct. Dec. 21, 2020), the Bristol Superior Court considered whether the same insurance policy language at issue here covered losses arising from COVID-19 and concluded that it could not "be construed to cover physical loss in the absence of some physical damage to the insured's property." *Id.* at 5, citing *HRG Dev. Corp. v. Graphic Arts Mut. Ins. Co.*, 26 Mass. App. Ct. 374, 377 (1988); *accord SAS Int'l, Ltd. v. Gen. Star Indem. Co.*, 2021 WL 664043, at *2-3 (D. Mass. Feb. 19, 2021); *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 2021 WL 858378, at *3 (D. Mass. Mar. 5, 2021). A leading insurance treatise offers the following guidance.

> The requirement that the loss be "physical," given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

10A Couch on Ins. § 148:46 (3d ed. 2020) (footnotes omitted).

In the face of established precedent, plaintiffs strive for an interpretation of the Policy's relevant language that gives rise to coverage broader than that supported by its plain meaning. Attempting to differentiate "physical loss" from "damage to," plaintiffs reason that the preposition "or" separating these terms in the Policy broadens the reach of the phrase "physical loss," otherwise it would be void as surplusage of the term "damage to." Opp'n at 2, 10. The court disagrees. Because the phrase at issue consists of a sequence of related terms, a proper grammatical reading gives a parallel construction to the adjective "physical," meaning that it modifies both "loss of" and "damage to." *Accord Roche Bros. Supermarkets, LLC v. Cont'l Cas. Co.*, 2018 WL 3404061, at *4 (Mass. Super. Mar. 16, 2018) ("[T]he coverage clause . . . insur[ing] 'against risks of direct physical loss of or damage to property,' is unambiguous. The risks being covered are physical loss of property and physical damage to property.").

Regardless, construing the language "physical loss of" to cover the deprivation of a property's business *use* absent any tangible damage distorts

the plain meaning of the Policy.[7]  Although the Policy extends to imminent risks of "physical loss of or damage," it does not cover a mere threat to the insured property if no actual physical damage would occur should that threat materialize.   Moreover, plaintiffs' argument that the "Policy's Business Income and Extra Expense Coverage . . . has no real or personal property claim prerequisite," Opp'n at 2, overlooks the plain meaning of that provision's requirement of "direct physical loss of or damage."  Nor does the court credit the argument that defendants "treated [these] five words . . . as a standalone phrase," Opp'n at 6; *see also id.* at 13 (arguing that defendants "get[] lost in only five words of the Policy"), where that phrase establishes a

---

[7] The case law that plaintiffs cite for this proposition does not support their "loss of use" interpretation.  *See* Opp'n at 10.   In *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, 2018 WL 3829767 (C.D. Cal. July 11, 2018), the court applied the language "loss of" not to property that lost its intended use, but rather to property that was "misplaced and unrecoverable" – there, a lost and mislabeled shipping container.  *Id.*, at *3. Additionally, courts have either tiptoed around the holding in *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020), criticized it, or treated it as the minority position.  *See, e.g., W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 2020 WL 6440037, at *4 (C.D. Cal. Oct. 27, 2020); *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 2020 WL 5742712, at *7 (C.D. Cal. Sept. 10, 2020); *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of the S.E.*, 2021 WL 289547, at *6 n.5 (E.D. Pa. Jan. 28, 2021); *Zwillo V, Corp. v. Lexington Ins. Co.*, 2020 WL 7137110, at *8 (W.D. Mo. Dec. 2, 2020); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 2020 WL 7351246, at *6 n.9 (W.D. Tex. Dec. 14, 2020); *Kirsch v. Aspen Am. Ins. Co.*, 2020 WL 7338570, at *5 n.2 (E.D. Mich. Dec. 14, 2020).

threshold condition for coverage.  The analysis that SAS presents, by contrast, would require the court to read this language *out* of the Policy.

To establish that COVID-19 caused "direct physical loss" to its insured premises, plaintiffs also analogize the virus to the type of contaminant that the First Circuit and Massachusetts state courts have found "reasonably susceptible to an interpretation [of causing] physical injury to property." *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009); *see also Matzner v. Seaco Ins. Co.*, 1998 WL 566658, at *3 (Mass. Super. Aug. 12, 1998).[8]  Unlike an unpleasant odor, however, COVID-19 is imperceptible; it does not endure beyond a brief passage of time or a proper cleaning, let alone render the property permanently uninhabitable or unusable.  *See Diesel Barbershop, LLC v. State Farm Lloyds*, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020).  Plaintiffs' argument that "none of the cases [like *Essex*] required . . . that the contaminant originate from a physical feature of the property" strays from the point.  Opp'n at 7.  The

---

[8] The Massachusetts Supreme Judicial Court has not determined whether the phrase "physical loss" covers a property's loss of use stemming from an intangible substance.  *See Essex*, 562 F.3d at 404; *Matzner*, 1998 WL 566658, at *3 ("'[D]irect physical loss or damage' is . . . susceptible of at least two different interpretations.  One includes only tangible damage . . . . The second includes a wider array of losses.").  The court need not grapple with this unsettled issue because no reasonable construction of the phrase "direct physical loss," however broad, would cover the presence of a virus.

characteristic determining whether a substance causes physical loss under the Policy is not its origin, but rather its effect on property.  The *Essex* comparison is also unconvincing because the Policy excludes from its definition of a "Period of restoration" acts by an insured to "test for, clean up, remove, contain, treat, detoxify, or neutralize . . . pollutants" in compliance with an ordinance or law.  Policy § XIV(A)(50)(b); *see also id.* § XIV(A)(53) (defining "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, and waste").[9]

Moreover, reading the phrase "direct physical loss" in the context of the Policy underscores the lack of coverage for losses arising from a virus. *See Allamerica Fin. Cory, v. Certain Underwriters at Lloyd's London*, 449 Mass. 621, 628 (2007) ("Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning

---

[9] Putting aside the Policy's exclusion for remedying the effects of gaseous contaminants, a more sympathetic case for an insured might be made in the instance of smoke taint of the kind that ruined much of the Napa, California grape harvest in 2020 in the wake of devastating wildfires. Burning wood releases volatile phenols that bind with organic sugars in grapes.  The result is to infuse wine distilled from the grapes with a medicinal, ashen taste that consumers find unpalatable.  In the smoke taint instance, because the damage is a physical and irreparable alteration of the chemical structure of the grape, a claim for damage "to or of" property might stand on firmer ground than in the case of COVID-19.

and effect whenever practicable.") (internal quotations and citations omitted).  The Policy excludes from coverage not only remediation of pollutant vapors, as described above, but also "[a]ny loss, cost or expense arising out of the abating . . . remediating or disposing of, or in any way responding to . . . fungi or bacteria."  Policy, Fungi or Bacteria Exclusion § A(2)(b).  A construction of the Policy that covers losses related to COVID-19 yet excludes losses arising from substances of a similar nature – e.g., biological, microscopic particles – is unreasonable.  Contrary to plaintiffs' assertion that "in the interest of not rendering . . . exception[s] superfluous, other types of cleaning, quarantine, and detoxification must be included" as covered, Opp'n at 11-12, the "absence of an express [virus] exclusion does not operate to create coverage" for pandemic-related losses, *Given v. Com. Ins. Co.*, 440 Mass. 207, 212 (2003).

Having found that the phrase "direct physical loss" does not encompass a viral infestation, plaintiffs cannot establish coverage under any part of the Policy[10] – and, thus, cannot maintain any of their claims.  A breach of the implied covenant of good faith and fair dealing still requires the

---

[10] For example, while plaintiffs argue that Civil Authority Coverage provides an avenue to relief as a "standalone covered loss under this Policy," Opp'n at 14, the Policy limits Civil Authority Coverage to a "covered cause of loss" – namely, a "direct physical loss."

existence of a contractual duty. *See Uno Rests., Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004) ("The covenant may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship."). Likewise, although "refusing to pay claims without conducting a reasonable investigation based upon all available information" in violation of Mass. Gen. Laws ch. 176D, § 3 can establish a Chapter 93A violation, *see R.W. Granger & Sons, Inc. v. J & S Insulation, Inc.*, 435 Mass. 66, 78 (2001), that defendants "never investigated the presence of COVID-19 on [p]laintiffs' premises" is irrelevant where its presence does not establish coverage under the Policy, Opp'n at 19. Consequently, the court will join the many other courts that across the country have reached the same result. *See* App'x to Mot. (Dkt # 31) (collecting cases).

## ORDER

For the foregoing reasons, the motion to dismiss is <u>ALLOWED</u> in its entirety. The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/Richard G. Stearns
UNITED STATES DISTRICT JUDGE